**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


CHRISTY MATHIS,

        Plaintiff,

vs.                                           CASE NO.  5:05cv163/RS


WACHOVIA formerly known as
SOUTHTRUST,

        Defendant.

_____/


<u>ORDER</u>

      Before the Court is Defendant's Motion for Summary Judgment (Doc. 35) and Plaintiff's Response (Doc. 66). The Motion for Summary Judgment is granted.


<u>FACTS</u>

      Plaintiff Christy Mathis (Mathis) is an African-American woman who was hired by SouthTrust bank in July 2000. She was employed as a head teller and head teller supervisor at the SouthTrust branch located at Thomas Drive in Panama City, Florida, and from 2005 until 2006 as a teller with Wachovia after its merger with SouthTrust. Mathis claims that several actions of SouthTrust/Wachovia were racially discriminatory and retaliatory in violation of federal and state law.

      Mathis provides the following specific allegations of disparate treatment, disparate impact, hostile environment, and retaliation:


        1. Mathis received 90 days probation for cashing a $3,070 check while

1

another white teller did not receive any discipline despite violating the same policy;

2. Mathis received a 90 day probation for not running a money order through a check scanner while her white manager did not receive any discipline for her involvement in the incident;

3. Mathis was unfairly placed on probation for 90 days for an out of policy loss of $1,863.95;

4. Mathis was placed on probation after not conforming to Wachovia's dress code within 24 hours while another white employee who violated the dress code was not threatened with any disciplinary action or given any deadline to change her appearance

5. Mathis' application for the Financial Services Representative (FSR) position was rejected in favor of a less experienced white man;

6. Mathis' application for the Financial Center Manger (FCM) position was rejected in favor of a less experienced white woman;

7. Wachovia's actions demonstrate a compelling pattern of preferential treatment given to white employees and more severe treatment being given to the African American employees, including exclusion from leadership positions;

8. The discrimination at Wachovia was so "severe and consistent" towards Mathis and other African-American employees that she has been denied the opportunity to work in an environment free of discrimination and hostility; and

9. Mathis was removed from the Merger Ambassador Program in retaliation for her complaints to the EEOC regarding racial discrimination at Wachovia.

On June 30, 2004, Mathis filed a charge of racial discrimination against SouthTrust with the Florida Commission on Human Relations (FCHR). On June 7, 2005, Mathis filed a second charge of discrimination with the FCHR alleging racial

discrimination, hostile environment, and retaliation for filing the first charge of discrimination against SouthTrust. Mathis received a right to sue letter from the EEOC on December 27, 2005. Subsequently, after exhausting all of her administrative remedies, Mathis filed her Third Amended Complaint (Doc. 12) with this Court on February 14, 2006, alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964  (42 USC § 2000e et seq), Chapter 760 of the Florida Statutes, and the Civil Rights Act of 1866 (42 USC § 1981).

Wachovia contends that Mathis cannot establish a prima facie case of racial discrimination, hostile environment, or retaliation, and even she could, all of its decisions were based on legitimate, non-discriminatory reasons that were not pretextual. In addition, Wachovia argues that Mathis cannot establish a prima facie case of disparate impact.

## A. The Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)).  "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Tipton, 965 F.2d at 998 (citing Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251, 106 S. Ct. at 2512.  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).  Thus, "[i]f reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir.1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985)).  However, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 251, 106 S. Ct. at 2511).

If the movant satisfies its initial burden under Rule 56(c) by demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).  Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  "The nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton, 965 F.2d at 998 (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962)).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255, 106 S. Ct. at 2513 (citing Adickes, 398 U.S. at 158-59, 90 S. Ct. at 1609).  In light of the summary judgment standard, this Court will apply the relevant substantive law to the facts of the case.

## B.  Race Discrimination

Mathis claims that her treatment was racially motivated and discriminatory, violating Title VII (42 U.S.C. § 2000e et seq.),  42 U.S.C  § 1981, and the Florida Civil Rights Act (FCRA), Chapter 760. "Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under section[] 1981..., the legal elements of the claims are identical." Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir.1985); see also, Godoy v. Habersham County, 2006 WL 3592415, *2 (11th Cir. 2006)(holding that since "claims under Title VII and § 1983…have the same elements of proof and analytical framework" they can be discussed concurrently). In addition, "[a] claim under the FCRA is analyzed under the same standards as a Title VII claim." Tippie v. Spacelabs Medical, Inc., 2006 U.S.App. LEXIS 10658, *3 n. 1 (11th Cir.2006) (citing Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir.1998)).

Title VII prohibits an employer from " discharg[ing] any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a). "The two theories of intentional discrimination under Title VII are disparate treatment discrimination and pattern or practice discrimination." Burke-Fowler v. Orange County, Fla., 447 F.3d 1319,1322 (11th Cir. 2006). While "[b]oth pattern and practice and disparate treatment claims require proof of discriminatory intent; disparate impact claims do not." E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263,1273 (11th Cir.1999). Mathis seems to allege that she suffered discrimination under all three theories of Title VII, and as such, each of her claims will be analyzed in turn.

### i. Disparate Treatment

"Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence." E.E.O.C. v. Joe's Stone Crab, 220 F.3d 1263, 1286 (11th Cir. 2000). A prima facie claim of discrimination can be established three ways: 1) direct evidence; 2)circumstantial evidence; or 3) statistical proof. See Earley v.

Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir.1990). Mathis claims that there is both direct and circumstantial evidence supporting her claims.

### a. Direct Evidence

Mathis states that she can "present direct proof of racial animus."  (Doc. 57, Plaintiff's Trial Brief and Memorandum of Law, p. 5).  Direct evidence of discrimination is "evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1529 (11th Cir.1987) (quoting Black's Law Dictionary 413 (5th ed.1979) (citation omitted and emphasis omitted)). "Direct evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir.1990) (citing Hill v. Metropolitan Atlanta Rapid Transit Authority, 841 F.2d 1533, 1539 (11th Cir.1988)). " 'Only the most blatant remarks, whose intent could be nothing other than to discriminate...' will constitute direct evidence of discrimination." Damon v. Fleming Supermarkets, Inc., 196 F.3d 1354, 1359 (11th Cir.1999) [citing Early v. Champion Int'l Corp., 907 F.2d 1077, 1081-82 (11th Cir.1990) (citations omitted)].

There are no allegations that could be construed as direct evidence of intent to discriminate by Wachovia. Therefore, Mathis' claim must fail because of the total absence of proof.

### b. Circumstantial Evidence

Turning to the circumstantial evidence provided by Mathis in alleging discrimination, the Court must apply the three-tiered analysis set forth in McDonnell Douglas and refined in Texas Dept. Of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S.Ct. 1089, 1093-95, 67 L.Ed.2d 207 (1981). See Byrd v. Lakeshore Hosp., 30 F.3d 1380, 1383 (11th Cir.1994). Under the McDonnell Douglas analysis, a plaintiff is required to first establish, by a preponderance of the evidence, a prima facie case that creates a rebuttable presumption of unlawful discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. "The plaintiff's burden of establishing a prima facie case

6

serves, in part, to assure that the plaintiff has some competent proof that she was treated differently than similarly situated employees." Lang v. Star Herald, 107 F.3d 1308, 1312 (8th Cir.1997). Second, if the plaintiff successfully establishes the prima facie case of discrimination, the burden of production "then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. Finally, if the employer successfully articulates some legitimate, nondiscriminatory reason for the employee's rejection, the plaintiff must demonstrate by a preponderance of the evidence that the employer's stated reason for rejecting the employee was merely a pretext for discriminating against her. Id. at 804; 93 S.Ct. at 1825. Despite the shifting burdens of proof, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.

Mathis has failed to establish a prima facie case of discrimination. Even if she had done so, Mathis has not provided sufficient evidence for a reasonable jury to determine that SouthTrust/Wachovia's decisions to discipline or not promote Mathis were premised on anything other than legitimate, non-pretextual reasons.

<u>aa.Prima Facie Case</u>

Under the McDonnell Douglas framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally." McCalister v. Hillsborough County Sheriff 2006 WL 3741883, *2 (11th Cir. 2006). To establish a prima facie case of disparate treatment under this rubric, a plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. Maynard v. Bd. of Regents of the Div. of Univ. of Fla. Dep't of Educ, 342 F.3d 1281,1289 (11th Cir.2003).

Mathis provides several examples of disparate treatment that took place during her tenure with SouthTrust/Wachovia in order to prove that the bank's actions were motivated by race, all of which can be divided into two discrete areas - discipline and promotion. Each area will be analyzed in turn.

**Disciplinary Actions**

Mathis was disciplined several times during her tenure with SouthTrust /Wachovia. She contends that, at a minimum, the following disciplinary acts were based on race: 1) In March 2003, Mathis received a 90 day probation for cashing a check over $3,000; 2) In March 2004, Mathis received a 90 day probation for her involvement with a fraudulent Canadian money order that resulted in a loss of over $70,000; 3) In December 2004, Mathis was placed on probation for 90 days for an out of policy loss of $1,863.95; and 4) In March 2005, Mathis was told to change her hair color by supervisors and formally written up; a white employee was "gently" asked to "tone down her suggestive clothes and make-up." Finally, for cases involving alleged racial bias in the application of discipline for violation of work rules, the Eleventh Circuit has tailored the general Title VII standard as follows: plaintiff, in addition to being a member of a protected class, must show she "has engaged-either (a) disputedly or (b) admittedly-in misconduct similar to persons outside the protected class; and that similarly situated, nonminority employees (that is, persons outside the protected class) received more favorable treatment." Jones v. Bessemer Carraway Medical Ctr., 137 F.3d 1306, 1311 n. 6 (11th Cir.1998), modified in non-relevant part on denial of reh'g, 151 F.3d 1321 (11th Cir.1998) (modifying Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir.1989)).

Both parties agree that Mathis is a part of the protected class. Wachovia focuses on its argument that Mathis cannot identify any similarly situated employees outside of her protected class who were treated more favorably. When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, the Court must evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir.1999) (citations and quotation marks omitted). When making that

determination, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. (citation omitted); see also Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir.1984) (requiring a plaintiff bringing a discriminatory discipline claim to show "that the misconduct for which he was discharged was nearly identical to that engaged in by an employee outside the protected class whom the employer retained") (citations, quotation marks, and alterations omitted).

It is undisputed that Mathis violated SouthTrust policy by cashing a check for over $3000 without approval from a supervisor, resulting in a loss of over $3000 for the bank. She claims that Jarod Griffin (Griffin), a white teller, was not placed on probation for violating the same policy. (Doc. 37, Exhibit 3, Mathis Deposition (Mathis Depo)100:17-25). Mathis argues that this directly violates SouthTrust's policies. According to Mathis, "He [Griffin] had a  - - he had a policy violation that I feel was in the same guidelines as myself." (Mathis Depo, 104:11-12). Thus, in Mathis' opinion, she felt that Griffin had violated a provision within the same guidelines.

In August 2002, Griffin deposited a credit card check for $1600 without placing a hold on the deposit as required by SouthTrust's policies and procedures. Eventually, the check was returned for insufficient funds. Mathis claims that according to the "records," the account was "charged off and the bank was not paid $1243.77." (Doc. 66, part 3). Wachovia contends (and the Court agrees) that there is no evidence in the record demonstrating that Wachovia lost money as a result of Griffin's error. Mathis also contends that Griffin should have been placed on probation in January 2003, for depositing another credit card check for $1100 (along with $400 cash) which was also subsequently returned for insufficient funds. She states that Sonya Richbourg wrote a memorandum indicating that the "bank suffered a loss." Id.  Mathis does not provide any evidence as to the amount of the bank's loss beyond her own contention that it was over $1000. On the other hand, according to the records custodian for Wachovia, SouthTrust's employment records indicate that this event did not lead to a loss over

$1000 and the Market Operations department did not classify it as an out of policy violation, unlike Mathis' situation. (Doc. 38, Butler Affidavit, ¶ 12).

Wachovia also provides evidence that a member of the Mathis' protected class, Vaun Marks, also deposited a credit card check for $1,600 a few days earlier which was returned for insufficient funds. In a vein similar to Griffin, Marks was not subjected to any discipline. Mathis contends that Marks' actions, unlike Griffin's, did not cost the bank a $1,000 loss, the minimum amount necessary to trigger the discipline provision. There is nothing in the record that supports Mathis' contention. Overall, Mathis' contentions regarding Griffin and Marks are based on conclusory allegations without any support in the record, and as a result, they have no probative value. See e.g. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir.2000)(holding that "This court has consistently held that conclusory allegations without specific supporting facts have no probative value").

Even if Mathis' contentions had some factual support in the record - i.e. Griffin and Marks' errors had cost the bank the amount of money she alleges - there are still several distinctions that can be drawn between the actions of Griffin and Marks and the actions of Mathis. First, Griffin/Marks' transactions involved the improper depositing of credit card checks without placing a hold on them. Mathis cashed a check immediately without obtaining proper approval. Jason McCormick, a white backup head teller at the Thomas Drive branch, received the same punishment as Mathis (90 day probation) when he cashed a check for over $1600 without approval, in violation of the teller operations manual (TOM).[1] (Doc. 38, Butler Appendix, Exhibit 3). Second, Mathis' level of employment was senior to that of both Griffin and Marks. Mathis was a teller

---

[1] The TOM is the "bible" for new tellers, containing teller policies (e.g. security procedures, cash control procedures) and disciplinary guidelines. It provides a "certain level of uniformity to disciplinary issues for teller and teller supervisor positions" and states that a "teller's overall performance will be considered" when determining what disciplinary action is appropriate. (Doc. 38, Butler Affidavit, Exhibit 1). The TOM guidelines allowed for some discretion as they were "not intended to replace the good judgment of supervisory personnel when additional issues and/or unique circumstances are identified." (Doc. 38, Butler Affidavit, Exhibit 1).

supervisor in charge of both Griffin and Marks. Third, the decisions to discipline Mathis and not Griffin or Marks were based on the policy decisions of upper management at SouthTrust. A written communication authored by Financial Center Manager (FCM) Richbourg and dated March 10, 2003, states that SouthTrust's Operations Officer explained that the bank had "charged off" Griffin's and Marks' transactions to fraud and not as an "out of policy charge due to no holds being placed on the account." (Doc 37, Mathis Depo, Exhibit 16). "Keeping in mind that Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules," no reasonable jury could find that Griffin and Marks were similarly situated to Mathis. Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir.1999) (citations and quotation marks omitted).

Mathis also contends that the 90 day probation she received for depositing a foreign money order without scanning it was discriminatory since the FCM, Lynette Freeman, did not receive any discipline despite her approval of the transaction. Wachovia claims that the two were not similarly situated because their levels of experience were different - Mathis had been a teller supervisor for several years, and in theory, was intimately familiar with SouthTrust's policies. On the other hand, Freeman had only been an employee for four days and had not received any formal training from SouthTrust. Mathis claims that she tried to dissuade Freeman from cashing the money order although she admits that she was the person that actually processed the check. Based on the fact that Freeman was, at least in theory, Mathis' supervisor, logic dictates that she should have borne some responsibility for the incident. However, under these circumstances, it is clear that Freeman and Mathis were not similarly situated because even though Freeman was Mathis' manager, she had not received any formal training as of the date this transaction occurred. In addition, the disciplinary histories of the two women were vastly different. Thus, the "quantity and quality" of their transgressions differ, and as a result, these employees were not similarly situated.

As to the 90 day probation that Mathis received after processing a check for over $1800 without placing a hold, Mathis contends that the check was "ok" and "not out of policy." Once again, Mathis' conclusory statement has no probative value. It is clear that

11

Mathis signed the form disciplining her for this infraction and actually asked for a copy of the specific TOM policy in question. (Doc. 37, Mathis Deposition, Exhibit 16). Unlike previous occasions, Mathis did not indicate on the form that she disagreed or had any opposition to the discipline being imposed. In addition, Wachovia correctly claims that Mathis has not identified any employee who was similarly situated and received less discipline. (Doc. 37, Mathis Deposition, Exhibit 16). As a result, this claim must also fail at the prima facie stage.

Finally, Mathis alleges that a white teller, Nicole Grezla, was similarly situated and disciplined less severely for violating the same dress code policy as her. Specifically, Mathis contends that Grezla was not ordered to comply with the dress code within 24 hours. It is undisputed that Grezla's heavy makeup and tight clothes did not comply with Wachovia's dress code. It is also undisputed that Freeman asked Mathis to convey this to Grezla (Mathis did not do so), and Freeman eventually asked Grezla to change, at a minimum, her makeup.  According to Wachovia, Grezla did so by the next day. Mathis contends that "Grezla's appearance never changed after Ms. Freeman spoke to her about her style of dress." (Doc. 66, part 3). Mathis does not dispute that Grezla changed her makeup.

While Wachovia does not dispute that Grezla was not given a 24 deadline to comply with Freeman's request, it still contends that Mathis and Grezla were not similarly situated. Wachovia argues that Grezla was not an experienced Teller Supervisor with the responsibility to guide other employees and she did not attend the Merger Ambassador meeting which led to Mathis' discipline. Also, as Wachovia suggests, Mathis was directly involved in Grezla's situation and she could have suggested disciplinary action be taken against Grezla to insure her immediate compliance. In addition, Grezla actually changed her makeup within 24 hours - if Mathis had changed her hair color as required, there is no evidence that she would have then been placed on probation. In fact, as soon as Mathis complied with Wachovia's dress

code mandate, her probation was rescinded.[2] As a result, Mathis has failed in establishing a prima facie case with respect to any of the disciplinary actions taken by SouthTrust/Wachovia.

**Failure to Promote**

Mathis unsuccessfully applied for two promotions while employed at SouthTrust/Wachovia: 1) In April 2003, Mathis applied for the Financial Services Representative (FSR) position at SouthTrust's Harrison Avenue branch; and 2) In August 2003, Mathis applied for the Financial Center Manager (FCM) position at SouthTrust's Thomas Drive Branch.  Mathis claims that the denial of these promotions was premised on race. As for failure to promote claims, the Eleventh Circuit has tailored the general Title VII standard as follows: "In order... to establish a prima facie case of discrimination for [Wachovia's] failure to promote h[er], [s]he must show that (1) [s]he is a member of a protected class; (2) [s]he was qualified and applied for the promotion; (3) [s]he was rejected despite h[er] qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." Jerome v. Marriot Residence Inn Barcelo Cresline/AIG, 2006 WL 3487152, * 2 (11th Cir. 2006); Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988).

The parties agree that Mathis is a member of a protected class. The parties disagree about prongs two and four. Mathis argues that she was qualified for the positions and that a lesser qualified non-black employee was promoted to each of these positions. Wachovia claims that Mathis was not qualified for either of the positions and that there were no employees outside of the protected class with qualifications equal to or lesser than Mathis who received the positions in question. For the reasons below, Mathis has not met her burden to establish a prima facie case.

As to the FSR position, Wachovia argues that because of Mathis' 90 day probation, she was barred from applying for a promotion by SouthTrust's Career

---

[2] Mathis contends that Cassandra Goetz, a white female, also dressed inappropriately. However, as with Grezla, Goetz is not a proper comparator because she was a floater teller, not a head teller.

Opportunity policy which precludes an employee on probation from applying for a promotion. Mathis does not dispute that this policy did bar her from applying for this position. However, Mathis contends that another employee, Jarod Griffin, should also have been denied the opportunity to apply for the position since she believed he had violated the same policy. After discussing this issue with Mathis, Michelle Garcia, the human resources manager for SouthTrust's market, exempted Mathis from the probation promotion policy and allowed her to take the Sales Professional Selector Exam (Selector Exam). Wachovia states that Mathis' exam results (an overall score of a "D") did not meet the minimum standards for the position and Mathis' overall qualifications did not meet the minimum requirements for the position. As a result, Mathis was not interviewed or selected for the position. Mathis "disputes the grade given to me or the need for the test." (Doc. 66, part 3, Third Affidavit of Mathis, ¶ 7).

While the Court must resolve all factual inferences in favor of the non-moving party, that party cannot refute the moving party's factual allegations with a "'scintilla" of evidence; there must be enough of a showing that the jury could reasonably find for that party. Mathis has not provided any evidence that the grade given to her was fraudulent. In fact, in Mathis' deposition, she confirms Wachovia's contention:

> Q. Did you actually take the test?
> A. Yes, I did.
> Q. Did you pass the test?
> A. It's graded on certain areas. So, I don't know if it was a pass or a fail, it's just that you are graded in certain categories...
> Q. Were some of your grades in these categories lower than necessary for the position?
> A. Yes.

(Mathis Deposition, 145:14-24). In addition, Mathis does not point to any SouthTrust policy that would have allowed someone with her specific qualifications to bypass taking

the exam.[3]

Mathis also unsuccessfully applied for the vacant position of the Financial Center Manager at SouthTrust's Thomas Drive branch in August 2003. Mathis claims that she was denied the position on account of race and did not even merit an interview despite her familiarity with the bank's financial products and the fact she had filled in as the de facto FCM during the time period that SouthTrust reviewed applications for the vacant FCM position. According to Wachovia, Mathis was not selected because she did not meet the minimum qualifications necessary for the position. Wachovia claims that while Mathis possessed experience in the <u>operations</u> side (three years experience as a full time head teller/teller supervisor at SouthTrust) and reported directly to the FCM, Human Resources determined that Mathis did not have enough <u>sales</u> experience to become an FCM.[4]

Wachovia's notice of the FCM opening stated that requirements for the job were as follows: "Strong sales orientation; excellent communication skills, previous retail bank experience with emphasis in consumer and commercial banking, previous loan production and business development experience." (Doc. 38, Appendix to Butler Aff, Exhibit 6). In addition, the description stated the FCM position required a person in that position to "plan, direct, and manage the market planning, business development, and service activities of the branch in order to achieve the branch sales, financial, and marketing goals and to improve the share of market for branch area." <u>Id.</u> The job description also stated that previous banking experience as a branch manager and a four year degree in business, management, or finance was preferred. <u>Id.</u>

---

[3] Even if Mathis had satisfied the second prong, her prima facie case would have failed because no reasonable jury could conclude that Griffin's qualifications, including his prior experience as a FSR, were equal to or less than Mathis' credentials with respect to the FSR position. See <u>Alexander v. Fulton County</u>, 207 F.3d 1303, 1340 (11th Cir. 2000)("In a Title VII action, it is not the role of the Court to second-guess the wisdom of the employer's decision as long as the decisions are not racially motivated).

[4] SouthTrust was divided into two sections - operations and sales. As Teller Supervisor, Mathis supervised the operations unit.

It is clear that Mathis did not fulfill the requirements for the FCM position. In an e-mail from Shirley Fiano of the Human Resources Department and dated August 13, 2003, Fiano explains that she provided Mathis with an explanation (not enough sales experience) for the denial of her application and provided her with specific guidance on how to obtain the requisite experience necessary to become a FCM. (Doc. 38 Appendix to Butler Affidavit, Exh. 7). In addition, it is true that the competitiveness of Mathis' application would have been enhanced by the experience Mathis gained during the period when the FCM position was vacant. However, Wachovia's records custodian confirms that the decision to reject Mathis' application occurred prior to the resignation of FCM Sonya RichBourg. (Doc. 38, Butler Affidavit, ¶ 19). Mathis contends that this is not true, and argues that RichBourg left in June 2003, but provides no factual evidence to support that contention. Even if Mathis was qualified for the position, Mathis has not provided enough evidence for a reasonable jury to conclude that the eventual hire, Lynette Freeman, was equally or lesser qualified than she. Freeman's resume is replete with sales experience and she had served for two years as a Financial Specialist with Wachovia. (Doc. 38, Appendix to Butler Affidavit, Exhibit 8). Mathis certainly had more overall banking experience, but her experience was primarily in the operations side with little direct experience in sales. Thus, Mathis has not met the requirements for a prima facie case in either of the situations in which she was denied a promotion.

### bb. Employer's Legitimate Nondiscriminatory Reason

Even if Mathis had established a prima facie case for her discrimination claims, Wachovia satisfied its burden of articulating a legitimate, nondiscriminatory reason for each of its actions with respect to Mathis. In showing that it had a legitimate, nondiscriminatory reason for its actions, the defendant's burden is "exceedingly light." Perryman v. Johnson Prods. Co. Inc., 698 F.2d 1138, 1142 (11th Cir.1983) (citing Burdine, 450 U.S. at 254-55, 101 S.Ct. at 1094). "The defendant only needs to produce evidence of a reason for its decision; it does not need to prove that it was actually motivated by that explanation." Sermons v. Fleetwood Homes of Georgia, 227 F.Supp.2d 1368, 1380 (citing Burdine, 450 U.S. at 254, 101 S.Ct. at 1094). "[The

16

proffered reason] is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Burdine 450 U.S. at 254-55, 101 S.Ct. at 1094. The defendant's burden at this stage of the analysis is "merely one of production, not of proof." Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir.1982). "As long as the defendant articulates its reason with some specificity so that the plaintiff has a 'full and fair opportunity to demonstrate pretext,' the defendant's burden has been met." Sermons, 227 F.Supp.2d at 1380 (quoting Burdine, 450 U.S. at 255-56, 101 S.Ct. at 1095).

As to disciplining and not promoting Mathis, Wachovia has provided legitimate non-discriminatory reasons for its actions. In summary, Wachovia states that Mathis was disciplined for violating specific TOM regulations and policies. Also, at least on the occasions when Mathis admitted to committing the specific violation in question, "the law is clear that, even if a Title VII claimant did not in fact commit the violation with which [s]he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation." Jones v. Gerwan, 874 F.2d 1534, 1540 (11th Cir. 1989). In addition, Wachovia states that Mathis was not promoted because she did not have the requisite qualifications necessary for the positions. Wachovia has clearly satisfied its burden.

### cc. Pretext

Once a defendant offers a legitimate, nondiscriminatory reason for its actions, the plaintiff must attack that reason 'head on and rebut it' so as to show that the reason is really pretext for discrimination." Sermons, 227 F.Supp.2d at 1381 ( quoting Chapman v. Al Transport, 229 F.3d 1012, 1030 (11th Cir.2000)). Pretext can be established by evidence which "cast[s] sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.' " Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir.1994). Stated differently, "the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' " Reeves v. Sanderson

Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 256, 101 S.Ct. at 1095). The proffered explanation is unworthy of belief if the plaintiff demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder" could disbelieve it. Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1538 (11th Cir.1997) (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir.1996)) (citation and internal quotation marks omitted). In order to prove pretext, the plaintiff may offer "direct evidence of discrimination in the form of statements and admissions or by circumstantial evidence in the form of comparative or statistical evidence." Woody v. St. Clair County Comm'n, 885 F.2d 1557, 1560 (11th Cir.1989) ( citing Miles v. M.N.C. Corp., 750 F.2d 867, 870 (11th Cir.1985)). The plaintiff may also establish pretext by showing that the employer did not rely on the proffered explanations for its actions. See Israel v. Sonic-Montgomery FLM, Inc., 231 F.Supp.2d 1156, 1162 (M.D.Ala.2002) (citing Chapman, 229 F.3d at 1024). Mathis does not meet her burden of establishing that a reasonable trier of the facts could find that Wachovia's explanations for disciplining and not promoting Mathis were pretextual.

Mathis primarily attempts to demonstrate pretext by relying on circumstantial evidence in the form of comparative evidence. However, none of that evidence comes remotely close to establishing pretext on the part of Wachovia. As to the promotions Mathis was denied, Wachovia had legitimate and consistent reasons for why Mathis did not receive the requested jobs - she did not have the requisite qualifications. Griffin eventually received the FSR job, in part, because he had served as a "FSR floater." While it is true that he did not take the Selector Exam, Wachovia's explanation that his prior work experience supplanted the necessity for testing him is logical and worthy of credence since the purpose of the Selector Exam is to determine whether an applicant is capable of performing the functions of an FSR ably. Since Griffin had successfully performed the functions of an FSR in practice, it hardly made sense for him to have taken a test that would provide only a theoretical prediction as to his ability to handle the job.

18

As to the FCM position, Mathis has not provided any evidence that her rejection for lack of sales experience was pretextual. Mathis was simply not qualified for the job. The eventual hire, Freeman, had far more sales experience than Mathis and thus met the qualifications of the job. While Mathis was not interviewed for the FCM job at Thomas Drive, it is worthwhile to note that her former FCM, Carol Ringheiser, a white woman, applied for the job as well, but was not afforded an interview. (Mathis Depo, 69:11-13). In addition, the eventual hire, Lynette Freeman, was a minority, although Mathis did not realize it at the time.

Mathis' discipline and her various probations do not establish pretext on the part of Wachovia. All actions were taken because of violations of SouthTrust/Wachovia policies. In fact, because of Mathis' disciplinary history, the bank actually could have been have tougher on her. None of Mathis' alleged comparators are similarly situated, and the reasons provided by Wachovia for their treatment are consistent and fall within the guidelines of its policies. A final note on this issue: one of Mathis' duties as head teller was to train all tellers. Ironically, Mathis broke many of the policies she was tasked with enforcing for other tellers. It is not surprising nor indicative of any racial animus, that upper management disciplined her and chose not to promote her.

<u>ii.Pattern and Practice</u>

Mathis claims that there was a "compelling pattern of preferential pattern of preferential treatment given to white employees and more severe treatment being given to the African American employees." She states that there is "evidence of a consistent pattern of racially based enforcement of discipline and denial of promotion opportunities for [Mathis] herself and other African American employed at SouthTrust and Wachovia in the Bay County Area from 2000 to 2006." (Doc. 66, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, p.2).

In order to show a pattern and practice, the following standard is applicable:

> In contrast, a pattern and practice claim either may be brought...[if there "reasonable cause to believe that any person or group of persons is engaged in a pattern or practice" of discrimination, 42 U.S.C. § 2000e-6(a) (1994); see also In re Employment, 198 F.3d at 1310 n. 8, or by a class of

private plaintiffs under 42 U.S.C. § 2000e, et. seq., see <u>Cox v. American Cast Iron Pipe Co.</u>, 784 F.2d 1546, 1549 (11th Cir.1986). In such suits, the plaintiffs must establish " 'that [  ] discrimination was the company's standard operating procedure.' " <u>Cox</u>, 784 F.2d at 1559 (quoting <u>Teamsters</u>, 431 U.S. at 336, 97 S.Ct. 1843); see also <u>Franks v. Bowman Transportation Co.</u>, 424 U.S. 747, 772, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). To meet this burden of proof, a plaintiff must "prove more than the mere occurrence of isolated or accidental or sporadic discriminatory acts. It ha[s] to establish by a preponderance of the evidence that [ ] discrimination [is] the company's standard operating procedure-the regular rather than unusual practice." <u>Teamsters</u>, 431 U.S. at 336, 97 S.Ct. 1843 (footnote and internal quotation marks omitted). While "pattern or practice cases are a variant of the disparate treatment theory and thus '[p]roof of discriminatory motive is critical,' " statistical evidence often is used to establish the existence of a pattern or practice. <u>Lujan v. Franklin County Bd. of Educ.</u>, 766 F.2d 917, 929 (6th Cir.1985) (quoting <u>Teamsters</u>, 431 U.S. at 335 n. 15, 97 S.Ct. 1843). A plaintiff may establish a pattern or practice claim "through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally." <u>Mozee v. American Commercial Marine Service Co.</u>, 940 F.2d 1036, 1051 (7th Cir.1991) We also point out that "direct evidence of an intent to discriminate" may be used to establish a pattern or practice claim. <u>Lujan</u>, 766 F.2d at 929 n. 15. Finally, we observe that in determining pattern or practice liability, the government is not required to prove that any particular employee was a victim of the pattern or practice; it need only establish a prima facie case that such a policy existed.

<u>E.E.O.C. v. Joe's Stone Crab</u>, 220 F.3d 1263, 1286-87 (11th Cir. 2000).

Mathis submits anecdotal evidence from four SouthTrust/Wachovia African American employees, excluding herself, to establish her claim that "the pattern [of discrimination at SouthTrust/Wachovia]....is clear and unequivocal." (Doc. 66, p. 4). Mathis provides the following specific examples: 1) Charles Gage, an African American maintenance employee at SouthTrust was promised a job as maintenance supervisor by his boss, but eventually his "white boss hired someone white without experience, denying Mr. Cage even the opportunity to apply for the job"; 2) Janifred Peacock, an African American woman who served as a FSR at SouthTrust, was asked to remove her application for the FCM position after Kim Ellis, a white member of upper management, stated that Peacock did not "look the part of a manger [sic] [and was] not professional

enough." Peacock was also denied a promotion to FCM at Thomas Drive, which was eventually given to an "unqualified white person with little or no knowledge of how to run a bank"; 3) In 2005, Beverly Washington, an African American woman employed as a head teller at SouthTrust was not given the assistance and training necessary to succeed in that position, thus forcing her to resign. The white employee hired to replace Washington was provided with the necessary assistance; and 4) Carla Houston, a head teller at SouthTrust was ignored, unfairly disciplined, and harassed by her white supervisor. Houston was so upset by this treatment, she mentioned that she might resign; she changed her mind the following day, but was sent home nonetheless. Houston was terminated for abandoning her job.

Mathis claims that because of their race, all of these African American employees were denied professional opportunities and disciplined in a discriminatory manner. Mathis also cites to the testimony of Vaun Marks; Carol Jones, a white female formerly employed as FCM at Wachovia ("to me it looks like SouthTrust (n/k/a Wachovia) has two sets of standards: one for whites and one for blacks)); Carla Houston; and Mathis herself. In essence, all of their testimony supports Mathis' contention that certain African American employees and white employees were treated differently.

Assuming that all of Mathis' claims are true, Mathis still does not provide enough evidence for a reasonable jury to conclude that racial discrimination was SouthTrust/ Wachovia's standard operating procedure. While Mathis provides anecdotal evidence of what she alleges to be a pattern of discrimination, she does not provide any information regarding whether these African Americans were the only ones that applied for promotions or faced discipline during the time she was employed. She cannot satisfy her burden of proof by providing "isolated" incidents of discrimination - rather, she must show that such a practice of discrimination was regular. Without providing the Court with any statistical evidence of Wachovia's alleged practice of discriminatory treatment towards African Americans,  it is impossible to conclude that a reasonable jury could find that Wachovia's standard operating procedure provided for racially discriminatory

treatment towards black employees. As a result, Mathis has failed to establish a prima facie case of pattern and practice racial discrimination claim.


### iii.Disparate Impact

Before addressing the substance of Mathis' disparate impact claim, it is necessary to address whether Mathis complied with the notice pleading requirements of the Federal Rules of Civil Procedure. Specifically, Wachovia contends (and the Court agrees) that Mathis did not allege a disparate impact claim until her motion for summary judgment.

The Federal Rules of Civil Procedure "impose a relatively lenient obligation upon pleaders in federal court... [a] pleader generally meets this obligation by notifying the opponent of the claim and proposed relief to such a degree that the opponent is able to formulate a response." Federal Practice and Procedure (Quick Reference Guide), p. 137 (2006) (citing Hamilton v. Allen Bradley Co., 217 F.3d 1321 (11th Cir. 2000) vacated and superseded (holding "Detail is not the bedrock on which a proper complaint stands; all that is required is that the defendant be put on notice of the claim being asserted against it and the ground on which it rests")). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Hamilton v. Allen-Bradley Co., 244 F.3d 819, 823 (11th Cir. 2000).

Mathis' Third Amended Complaint is difficult to follow and as far as the Court can discern, there is nothing in it that would provide notice of a disparate impact claim. Rather, Mathis includes that claim in her motion for summary judgment.[5] Even assuming that there is enough in the Third Amended Complaint to satisfy the Federal

---

[5] The Court has already denied the Plaintiff's Motion for Summary Judgment. Doc. 73.

Rules, Mathis still does not meet the criteria necessary to support a prima facie disparate impact claim, and thus this claim too must fail.

According to Title VII, "[i]n the first stage of a disparate impact case, the 'complaining party [must] demonstrate [ ] that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.' " In re Employment, 198 F.3d at 1311 (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). "To 'demonstrate' means to 'meet[ ] the burdens of production and persuasion.' " Id. (quoting 42 U.S.C. § 2000e(m) (1994)). "In other words, in order to surmount the first hurdle in a disparate impact race discrimination case, the plaintiff must make out a prima facie case 'that [a] facially neutral employment practice ha[s] a significantly discriminatory impact.' " Id. (quoting Connecticut v. Teal, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982)). As the Supreme Court explained in Watson, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Watson, 487 U.S. at 994, 108 S.Ct. 2777 (emphasis added); see also Edwards v. Wallace Community College, 49 F.3d 1517, 1520 (11th Cir.1995) (observing that "[a] plaintiff must identify a specific employment practice that leads to the disparate impact"); MacPherson, 922 F.2d at 771(noting that " 'a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack' ") (internal citation omitted).

Mathis claims that the employment practice in question is Wachovia's "policy" of not doing investigations into "the apparent racial inequities" in the workplace. This is clearly not a facially neutral employment policy and as a result, Mathis cannot successfully assert a disparate impact claim.

## C. Hostile Environment

Mathis claims that the discrimination at Wachovia "has been so severe and consistent towards [her] and other African-American employees that [she] has been denied the opportunity to work in an environment free of discrimination and hostility."

(Doc. 53, Joint Pretrial Stipulation, p. 4). In order to succeed on a claim for hostile work environment, a plaintiff must satisfy the following elements: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir.2002). Wachovia submits that with the exception of the first prong, Mathis cannot meet the criteria to establish a prima facie claim of hostile environment.

Mathis contends that SouthTrust/Wachovia was "aware or notified on numerous occasions that discriminatory actions were occurring" and yet did not adequately investigate these incidents.(Doc. 39, Plaintiff's Motion for Summary Judgment, p. 8). As a result, Wachovia's "refusal to follow its own rules and to investigate and discipline for racial discrimination" created a hostile environment for all African-Americans. Mathis contends that this was an "unwritten policy" of Wachovia that left African-American employees "vulnerable, afraid, and encourage[d] white employees to be abusive as the white employees have seen that there are [sic] and no consequences for racist discriminatory behavior." Id. In addition, she contends that her supervisors promoted a hostile work environment by intentionally and unlawfully preventing her from professional advancement. (Doc. 12, Third Amended Complaint, ¶ 81). In support, Mathis submits the testimony of Carol Jones, a white female who formerly served as a branch manager with Wachovia who stated that "the good ole boys" at Wachovia were not concerned with protecting the "rights of others outside that group." Despite this claim, the Court finds that Mathis clearly does not establish a prima facie case, and in particular, fails to demonstrate how any reasonable jury could determine that the treatment of Mathis and African-Americans generally, by Wachovia was harassing, (much less severe and hostile to the point of altering her terms of employment) or based on race.

The Eleventh Circuit has held that "[a] hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir.2002) In evaluating the whether the harassment was severe or pervasive, the following criteria is useful:

> 'In evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.' Id. at 1276. Moreover, 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.' Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (citation omitted).

Galloway v. Ga. Tech. Auth., 182 Fed.Appx. 877, 882 (11th Cir.2006). In addition, "[t]he employee must present concrete evidence in the form of specific facts, not just conclusory allegations and assertions." Godoy v. Habersham County, 2006 WL 3592415, *2 (11th Cir. 2006) (citing Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir.1990)). Mathis complains that Wachovia did not investigate instances of discrimination that she perceived. There is simply no factual evidence supporting Mathis' statement. In addition, there is no evidence that Wachovia employees frequently engaged in conduct that was physically threatening or humiliating towards Mathis or other African-American employees or that any such conduct interfered with any African-American's job performance. In addition, assuming Mathis' claims regarding these isolated incidents to be true, they still did not bare any indicia of racial animus on Wachovia's part. As stated above, the Court found that Wachovia's justifications for disciplining or not promoting Mathis to be legitimate and without pretext. Consequently, Mathis' hostile environment claim must fail as well.

**D. Retaliation**

In her Third Amended Complaint, Mathis contends that Wachovia also retaliated against her after she complained to Wachovia about the racial discrimination and hostile work environment that she and other African-Americans were experiencing and filed her first charge with the EEOC in June 2004 and second charge in June 2005. As a result of these actions, Mathis contends that Wachovia retaliated by "ma[king] [Mathis'] work environment worsen", forced Mathis to wait for promotions, removed/demoted her from the Merger Ambassador program, and wrote her up for the color of her hair. While Mathis alleges all of these claims in her Third Amended Complaint, in her Motion for Summary Judgment, she focuses on her removal/demotion from the Ambassador program and the actions taken by Wachovia as a result of her hair color.[6]

In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that 1) she was engaged in a statutorily protected activity, 2) she was subjected to an adverse employment action, and 3) the adverse employment action was causally related to her protected activities. See e.g. Farley v. Nationwide Mutual Insurance, Co., 197 F.3d 1322, 1336 (11th Cir. 1999). If the plaintiff can establish a prima facie case of retaliation, a presumption of retaliation is created, and " 'the burden shifts to the defendant to rebut the presumption by producing legitimate reasons for the adverse employment action." ' Sullivan v. National Railroad Passenger Corp., 170 F.3d 1056, 1059 (11th Cir.1999) ( quoting Raney v. Vinson Guard Service, 120 F.3d 1192, 1196 (11th Cir.1997)) (citation omitted), cert. denied, 528 U.S. 966 (1999).

In showing that it had a legitimate reason for its actions, the defendant's burden is "exceedingly light." Perryman v. Johnson Prods. Co. Inc., 698 F.2d 1138, 1142 (11th Cir.1983) ( citing Texas Dept. Of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "The defendant only needs to produce evidence of a

---

[6]The Court has already addressed the fact that there Wachovia had legitimate, non-pretextual reasons for disciplining and not promoting Mathis and as such, it need not regurgitate that discussion again. Suffice it to say, based on the evidence in the record, no reasonable jury could find that Mathis was not promoted or disciplined because of any retaliation on the part of SouthTrust/Wachovia. The Court will address Mathis' contentions regarding her removal from the Ambassador program and Wachovia's demand that she change the color of her hair in further detail.

reason for its decision; it does not need to prove that it was actually motivated by that explanation." Sermons v. Fleetwood Homes of Georgia, 227 F.Supp.2d 1368, 1380 (S.D.Ga.2002) ( citing Burdine, 450 U.S. at 254). The defendant's burden at this stage of the analysis is "merely one of production, not of proof." Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir.1982). "As long as the defendant articulates its reason with some specificity so that the plaintiff has a 'full and fair opportunity to demonstrate pretext,' the defendant's burden has been met." Sermons, 227 F.Supp.2d at 1380 ( quoting Burdine, 450 U .S. at 255-56).

If the defendant produces legitimate reasons for its actions, "the presumption of retaliation disappears." Johnson v. Booker T. Washington Broad. Serv., 234 F.3d 501, 507 (11th Cir.2000). The plaintiff must then attack that reason 'head on and rebut it' so as to show that the reason[s][are] really pretext[s] for [retaliation] ." Sermons, 227 F.Supp.2d at 1381 ( quoting Chapman v. Al Transport, 229 F.3d 1012, 1030 (11th Cir.2000)). Pretext can be established by evidence which "cast[s] sufficient doubt on the defendant's proffered [legitimate] reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct." ' Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 605 (11th Cir.1994). Stated differently, the plaintiff may establish that he was the victim of [retaliation] "by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. The proffered explanation is unworthy of credence if the plaintiff demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder" could disbelieve it. Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1538 (11th Cir.1997) ( quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir.1996)) (citation and internal quotation marks omitted). In order to prove pretext, the plaintiff may offer "direct evidence ... in the form of statements and admissions or by circumstantial evidence in the form of comparative or statistical evidence." Woody v. St. Clair County Comm'n, 885 F.2d 1557, 1560 (11th Cir.1989) ( citing Miles v. M.N.C. Corp., 750 F.2d 867, 870 (11th Cir.1985)). The plaintiff may also establish pretext by showing that ECUA did not rely on the proffered

explanations for its actions. See Israel v. Sonic-Montgomery FLM, Inc., 231 F.Supp.2d 1156, 1162 (M.D.Ala.2002). A plaintiff may not, however, establish pretext "merely by questioning the wisdom of the employer's reason" as long as "the reason is one that might motivate a reasonable employer." Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir.1997) ("Federal courts do not sit to second-guess the business judgment of employers").

In this case, Mathis states that she lodged complaints with her employer and with the EEOC concerning racial harassment. "Statutorily protected expression includes filing complaints with the EEOC and complaining to superiors about sexual harassment." Johnson v. Booker T. Washington Broad. Serv., 234 F.3d 501, 507 (11th Cir.2000) ( citing Rollins v. State of Fla. Dept. of Law Enforcement, 868 F.2d 397, 400 (11th Cir.1989)). In its Motion for Summary Judgment, Wachovia limits its argument to the second and third elements of the claim. Mathis has satisfied the first prong of her claim.

As for the second requirement of the prima facie case of retaliation, an adverse employment action must "either be an ultimate employment decision or else must 'meet some threshold level of substantiality.' Stavropoulos v. Firestone, 361 F.3d 610, 617 (11th Cir.2004) ( quoting Bass v. Bd. of County Comm'rs, Orange County, Fla., 256 F.3d 1095, 1117 (11th Cir.2001)). In other words, "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir.2000)(citation and internal marks omitted). An alleged retaliatory act must be both subjectively and objectively retaliatory. Gupta, 212 F.3d at 587. Wachovia contends that removal from the Ambassador Program in 2005 was not an adverse employment action because it did not equate with higher pay, better working conditions, or any other tangible job benefits. In addition, Wachovia contends that giving Mathis one day to change her hair color or face probation is at most a "minor annoyance."  While it is a close call, the Court finds that the removal of Mathis from the Ambassador Program was an adverse employment action because it deprived Mathis of an employment

28

opportunity and decreased her status as an employee. On the other hand, while Mathis was temporarily placed on probation for not changing her hair color within the requisite time period, she did not lose any job benefits and as a result, this would not qualify as an adverse employment action.

Finally, in order to establish a prima facie case of retaliation, Mathis must prove that the adverse employment action was causally related to her protected activities. Mathis' complaint to the EEOC occurred in June 2004, while her removal from the program occurred in March 2005. There was a nine-month gap between the two events, along with the major intervening event of the merger between SouthTrust and Wachovia. In a recent decision by the Eleventh Circuit, the court held that a seven month gap, without further evidence, was "insufficient to show the requisite causal connection necessary to establish a prima facie case of retaliation." Wallace v. Georgia Dept. of Transp., 2006 WL 3626967, *3 (11th Cir. 2006). As such, under the circumstance of this case, the nine month gap precludes a retaliation claim. However, even if Mathis could have established a prima facie case, Wachovia clearly had a legitimate, non-pretextual reason for removing Mathis from the Ambassador program and for placing her on probation – non-compliance with the dress code. As a result, Mathis' retaliation claim must fail.

**Conclusion**

    1. Wachovia's Motion for Summary Judgment (Doc. 35) is granted.

    2. The clerk shall enter judgment dismissing Mathis' claims with prejudice.

    3. The clerk shall close the file.

**ORDERED** on March 7, 2007.

**/s/ Richard Smoak**
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**